**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re:<br><br>**EP Technology Corporation USA**,<br><br>Debtor. | Chapter 11<br><br>Bankruptcy No. 19-90927<br><br>Honorable Mary P. Gorman |

**DEBTOR'S EMERGENCY MOTION FOR**
**AUTHORIZATION TO USE CASH COLLATERAL ON**
**<u>AN INTERIM BASIS</u>**

The above captioned debtor and debtor in possession (the "***Debtor***") respectfully states the following in support of this emergency motion to use cash collateral on an interim basis:

### 1. RELIEF REQUESTED

1.  The Debtor seeks entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "***Order***"), authorizing the Debtor to use prepetition collateral, including cash collateral, of the Debtor's secured lender on an interim basis over the next 3 weeks in accordance with the Budget appended to Exhibit A (the "***Budget***").

### 2. JURISDICTION AND VENUE

2.  The United States Bankruptcy Court for the Central District of Illinois (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 4.1 of the Local Rules for the Central District of Illinois.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure.

### 3. BACKGROUND

5. The Debtor is a wholesale distributor and on-line retailer of surveillance video products, such as pan-tilt-zoom security surveillance cameras, camera monitoring systems, and do-it-yourself surveillance products. The Debtor operates from an office, retail and warehouse facility located in Champaign, Illinois. The Debtor's customers are located throughout the United States.

6. On September 23, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Office of the United States Trustee for Region 10 has not appointed an official committee of unsecured creditors.

7. As discussed in more detail below, the Debtor filed for bankruptcy mainly because of cash flow impairment issues caused by approximately $15 million worth of goods needing software upgrades in order to be saleable. Such goods were in the possession of three primary customers – Amazon, Walmart and ASI – and were reflected on the books and records as an aggregate receivable of approximately $15 million. The Debtor learned over the last 30 days or so that Amazon, Walmart and ASI could not sell the subject products because of a problem with the software that had been downloaded into the products, and that these customers were going to return the product, and, as a result, not pay the approximately $15 million owed in respect to such product.

8. The Debtor anticipates that on a rolling basis over the next 4 to 9 months, the subject product will be returned to its warehouse in Champaign and

will be upgraded to include the new software and then resold to generate new receivables.  In the past, the product likely would have been returned to China for upgrading, but as a result of recently imposed tariffs that would be applied if the product were shipped to China for upgrading and then returned to the United States, the Debtor believes the most economical option is to upgrade the subject product in its Champaign facility.

9. Once the software upgrade has been accomplished, the Debtor believes the subject product will become inventory that is saleable to Amazon and Walmart (or others)  and will be transformed into receivables and then cash.

### 3.1. Concise Statement Regarding the Debtor's ABL Credit Facility.

10. As of the Petition Date, the Debtor's capital structure consisted of obligations under an outstanding credit facility in the amount of approximately $24,469,569.00. Pursuant to that certain Loan and Security Agreement dated August 17, 2012 (as amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "***ABL Credit Facility***") by and between the Debtor and UPS Capital Corporation ("***UPS***").  The ABL Credit Facility is collateralized by the Debtor's accounts receivable, inventory, and inventory-in-transit.

11. The Debtor currently has approximately $123,000 in cash and cash equivalents. The Debtor believes that UPS is the only claimant who has a claim secured by cash collateral.

12. If approved, the Debtor will use the collateral to fund the Debtor's business operations and chapter 11 administrative expenses. Access to the Debtor's cash collateral will provide an important signal to the Debtor's vendors and employees, among others, that the Debtor's operations will continue in the ordinary course on a postpetition basis.

13. In connection with its liquidity situation and the possibility of a chapter 11 filing, the Debtor, with the assistance of its legal and financial advisors, analyzed its projected cash needs and prepared a budget outlining the Debtor's postpetition cash needs in the initial 13 weeks of this chapter 11 case. Through this motion, however, the Debtor is only seeking to use cash collateral on an interim basis over the next 3 weeks, through October 18, 2019.

14. For these reasons, and the reasons set forth below, the Debtor believes that use of cash collateral will maximize value for the Debtor's estate and represents a sound exercise of the Debtor's business judgment. Accordingly, the Debtor respectfully requests that the Court approve entry of the Order.

## 4. BASIS FOR RELIEF

### 4.1. The Debtor Should be Authorized to Use the Cash Collateral.

15. A debtor in possession may not use cash collateral (that is, "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest") unless either (a) each entity that has an interest in the cash collateral consents or (b) the court authorizes the use. 11 U.S.C. § 363(a), (c)(2).

16. At the request of an entity that has an interest in the cash collateral, a court "shall prohibit or condition such use … as is necessary to provide adequate protection of such interest." *Id.* § 363(e). To the extent that the debtor's use of cash collateral results in a decrease of the value of an entity's interest in the property, the debtor may provide adequate protection of the entity's interest by (a) making cash payments, (b) granting additional or replacement liens, or (c) otherwise providing the entity with the "indubitable equivalent" of its interest. *Id.* § 361.

17. "Adequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." *In re Carpet Ctr.*

*Leasing Co.*, 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396–97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

### 4.2. The Debtor's collateral is not declining in value and the Debtor submits that a substantial equity cushion protects the Secured Creditor's position.

18. Section 361 of the Bankruptcy Code identifies the different forms of adequate protection. Adequate protection is a flexible concept and is provided when, among other things, the secured creditor obtains a replacement lien upon new property, or when there is an equity cushion. *See In re McKillips,* 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) ("Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection").

19. Additionally, if a creditor's interest in a debtor's property is not declining in value, the creditor generally is not entitled to additional adequate protection beyond the maintenance and upkeep of its property. *See, e.g., Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 209 (N.D. Ill. 1993) ("[T]he Debtor must provide adequate protection only to the extent the value of Fannie Mae's collateral is declining."); *In re Am. Consol. Transp. Cos.,* 2010 Bankr. LEXIS 3144 (Bankr. N.D. Ill. Sept. 10, 2010) ("Nor has the Bank met its burden of proving that the value of its collateral will decline during the pendency of the Debtors' bankruptcy cases. … As a result, the Bank is not entitled to any form of adequate protection.").

20. Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370–73 (1988) (the value of "such entity's interest in such property" is "the value of the collateral" securing the claim).

### 4.3. Because cash is being used to operate the Debtor's business, no additional form of adequate protection is needed.

21. Courts generally conclude that no additional form of adequate protection is needed if a debtor is seeking to use cash collateral to operate and to preserve its property. Additional protection is not needed in such instances because the use of cash enhances and does not deplete the value of a secured creditor's interests. *See, e.g.*, *In re Constable Plaza Assocs.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's plowing back of rents "solely for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *Dacon Bolingbrook Assocs.*, 153 B.R. at 209 (same).

22. In this case, the Debtor will use cash to operate its business and to preserve the going concern value of that business. As shown on the Budget, the Debtor's cash position will remain stable over the next three weeks, so the value of UPS' interests in the cash collateral will not decline.

23. But even if UPS was entitled to some form of adequate protection in this case, such protection is provided in the proposed interim cash collateral order, which provides for replacement liens on the same form and type of collateral securing UPS' claims as of the Petition Date. A replacement lien is widely considered adequate protection. *See* 11 U.S.C. § 361(2). Adequate protection also exists in the form of an equity cushion.

### 4.4. The lender is protected by an equity cushion

24. The Debtor also believes that UPS is adequately protected by an equity cushion. The book value of the Debtor's inventory is approximately $20 million and

the unadjusted book value of the Debtor's receivables (without deduction for uncollectible accounts) is approximately $25 million.[1]

25. The Debtor recognizes that its cash collections of late have not been good, but believes that is due to several factors that will be resolved given sufficient time. Indeed, the Debtor filed for bankruptcy relief, in part, to obtain a breathing spell so that it could work through inventory, collection and tariff issues that have negatively impacted its business recently.

26. For one thing, approximately $15 million of the approximately $25 million in accounts receivable reflects shipments to credit-worthy retailers (i.e., Amazon and Walmart) who have held back payment because the product that was dropped shipped to them from China needs a software upgrade in order to be saleable. The Debtor anticipates that on a rolling basis over the next 4 to 9 months, the subject product will be returned to its warehouse in Champaign and will be upgraded to include the new software and then resold. In the past, the product likely would have been returned to China for upgrading, but as a result of recently imposed tariffs that would be applied if the product were shipped to China for upgrading and then returned to the United States, the Debtor believes the most economical option is to upgrade the subject product in its Champaign facility.

27. Once the software upgrade has been accomplished, the Debtor believes the subject product will become inventory that is saleable to Amazon and Walmart (or others) and will be transformed into receivables and then cash.

28. Additionally, the Debtor anticipates that within the next 90 days, approximately $3 million will be collected from other customers (*See* Budget) and an

---

[1] As discussed below, approximately $15 million of the accounts receivable balance is owed by 3 accounts: Walmart, Amazon and a distributor known as ASI. This amount will need to be adjusted because the product at issue needs to be updated before it can be sold. However, although the receivable balance will be adjusted, the inventory or work in process balance will increase accordingly.

additional $5 million will be collected from Debtor-affiliated companies, such that during the next 90 days the Debtor's cash collections will exceed its use of cash by a substantial amount. *See* Budget.

### 4.5. Failure to Obtain Immediate Access to the Cash Collateral Would Cause Immediate and Irreparable Harm.

29. Bankruptcy Rule 4001 provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court may conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

30. The Debtor will use cash to, among other things, fund the administration of its chapter 11 case and the operation of its business. The Debtor believes their available cash constitutes collateral of UPS. The Debtor will be unable to operate its business without access to the cash collateral and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.

31. The Debtor requests that the Court hold and conduct a hearing to consider entry of the Order, which will provide the Debtor with access to cash collateral on an interim basis for the next 3 weeks, and schedule further hearings related to the use of additional cash collateral.

## 5. NOTICE

Notice of this motion has been provided to: (a) UPS, (b) the office of the U.S. Trustee for Region 10, (c) the holders of the twenty largest unsecured claims against the Debtor; and (d) all other persons receiving notices through the ECF system. The Debtor respectfully requests that such notice be deemed adequate and that the Court find that no other or further notice is necessary.

**Wherefore**, the Debtor respectfully requests that the Court authorize it to use cash collateral for the next 3 weeks on an interim basis and grant such other and further relief as is just and proper.

Dated: September 27, 2019                          **EP Technology Corporation USA**

                                                          By: /s/ William J. Factor
                                                          One of Its Proposed Attorneys

William J. Factor (6205675)
Angela M. Snell (6307044)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (312) 878-6976
Fax:   (847) 574-8233
Email: wfactor@wfactorlaw.com
          asnell@wfactorlaw.com

Jason Bartell
**BARTELL POWELL**
10 East Main Street
Champaign, IL 61820
Tel: (217) 352-5900
Fax: (217) 352-0182
Email: jbartell@bartellpowell.com

## CERTIFICATE OF SERVICE

I, William J. Factor, an attorney, hereby certify that on September 27, 2019, I caused a copy of the foregoing *Motion* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the appended Service List and by the method indicated on all other persons identified on the appended Service List.

/s/ William J. Factor

## SERVICE LIST

**Registrants**
(Service via ECF)

William J Factor    wfactor@wfactorlaw.com, nbouchard@wfactorlaw.com

Sabrina M Petesch    sabrina.m.petesch@usdoj.gov

U.S. Trustee    USTPRegion10.PE.ECF@usdoj.gov

**Others**
(Service via U.S Mail and other method indicated)

## SERVICE LIST

| | |
|---|---|
| Ameren Illinois<br>P.O. Box 88034<br>Chicago, IL 60680-1034<br>VIA Fax: 877-263-7369 | California Department of Tax and Fe<br>1521 W Cameron Ave, Ste 300<br>West Covina, CA 91790-2738<br>Fax: 626-480-7260 |
| Comcast<br>PO Box 37601<br>Philadelphia, PA 19101-0601<br>VIA Fax: 215-981-7790 | CNA Insurance<br>c/o Law Offices of Edward J. Kozel<br>333 S. Wabash, 25th Floor<br>Chicago, IL 60604<br>Fax: 312-817-1978 |
| Consolidated Communications<br>P.O. Box 2564<br>Decatur, IL 62525-2564<br>VIA Fax: 936-788-1229 | Commerce Technologies, Inc.<br>25736 Network Place<br>Chicago, IL 60673-1257<br>Fax: 518-810-0701 Attn: Noah<br>Email: accounting@commercehub.com |
| George Alarm<br>Attn: Billing Department | China Zmodo Corp- |

| | |
|---|---|
| 917 S. 9th Street<br>Springfield, IL 62703<br>VIA Fax: 217-241-7500 | Yancheng Subsidary Zmodo<br>Intelligence Industrial Park No.81<br>Yancheng Development Area<br>Yancheng, Jiangsu 00022-4007<br>VIA FAX (086)75586391860. |
| Federal Express<br>c/o/ THE CORPORATION TRUST CO.<br>1209 ORANGE ST<br>WILMINGTON, DE 19801<br>VIA Overnight Courtier. | Attn: President or Managing Member<br>Federal Express<br>3610 Hacks Cross Road<br>Memphis, TN 38125-8800<br>Via: Overnight Mail |
| Internal Revenue Service<br>Centralized Insolvency Operations P.O. Box 7346<br>Philadelphia, PA 19101-7346<br>VIA Fax: 855-810-2808 | Illinois Department of Revenue<br>101 W. Jefferson St.<br>Springfield, IL 62702<br>VIA Fax: 312-814-3589 |
| Martin, Hood, Friese, & Assoc, LLC<br>2507 South Neil Street<br>Champaign, IL 61820<br>VIA Fax:217-351-7726 | Kevin Wan<br>2501 Prairie Ridge Pl<br>Champaign, IL 61822<br>VIA Overnight Courier |
| Mu Meng<br>2504 Coppertree Rd<br>Champaign, IL 61822<br>Via Overnight Courier | Midwest Fiber Recycling<br>422 S. White Oak Rd.<br>Normal, IL 61761<br>Fax:217-356-6094 |
| Nantucket Cove<br>2001 N. Moreland Blvd.<br>Champaign, IL 61822<br>Via Overnight Courier | Mutual of Omaha<br>Payment Processing Center<br>Omaha, NE 68103-2147<br>VIA Fax:402-997-1998<br>Email: chicagoservice@mutualofomaha.com |
| Rental City<br>2508 N. Mattis Ave.<br>Champaign, IL 61826-7080<br>VIA: Overnight Courier | QBE<br>PO Box 3109<br>Milwaukee, WI 53201-3109<br>VIA Fax: 800-926-6686 |
| ULINE<br>Attn: Accounts Receivable<br>PO Box 88741<br>Chicago, IL 60680-1741<br>Fax: 800-295-5571 | Tepper Electric Supply<br>Des Moines, IA 50331-0656<br>VIA Fax: 217-356-7950 |

| | |
|---|---|
| United States Liability Ins Comp.<br>PO Box 62778<br>Baltimore, MD 21264-2778<br>Via Fax: 610-688-4391 | United Fuel Co.<br>P.O. BOX 938, Rantoul, IL 61866 US<br>Rantoul, IL 61866<br>Fax: 217-892-7905 |
| UPS Capital Corporation<br>35 Glendale Parkway, Suite 500<br>Atlanta, GA 30328<br>c/o Bryan Bates<br>Parker Hudson<br>VIA FAX: (404) 522-8409 | UPS<br>Lockbox 577<br>Carol Stream, IL 60132 |
| UPS SCS Chicago<br>2803 Network Place<br>Chicago, IL 60673<br>Via: Overnight Courier | UPS Capital Ins. Agency, Inc.<br>Cargo Premium Trust<br>PO Box 934852<br>Atlanta, GA 31193<br>Via U.S. Mail |
| Attn: President or Managing Member<br>UPS Capital Insurance<br>11119 Fall Point Dr<br>Houston, TX 77065-5325<br>Phone: 281-890-1323<br>Via: Overnight Courier | UPS Capital Insurance<br>55 Glenlake Parkway<br>Atlanta, GA 30328-3474 |
| Verified First<br>1550 S Tech Lane<br>Suite 200<br>Meridian, ID 83642<br>Via Overnight Courier | Urbana Champaign Sanitary District<br>1100 E University Ave<br>Urbana, IL 61802<br>VIA Overnight |

{00152297}                    —12—