**IT IS SO ORDERED.**

**SIGNED THIS: December 6, 2019**

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EP TECHNOLOGY CORPORATION USA[1] | § | Case No. 19-90927 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

_____

**FOURTH INTERIM CONSENT ORDER ON DEBTOR'S MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL
AND NOTICE OF FURTHER HEARING**

This matter originally came before the Court for hearing on October 2, 2019 on *Debtor's*

*Emergency Motion for Authorization to Use Cash Collateral on an Interim Basis* [Docket No. 4]

(the "**Cash Collateral Motion**") filed on September 27, 2019, by Debtor EP Technology

Corporation USA (the "**Debtor**"), requesting authority to use Cash Collateral (as defined below)

---

[1] The Debtor's tax identification number is 37-1397715. The location of the Debtor's headquarters and service address is 1401 Interstate Dr., Suite B, Champaign, IL 61822.

until October 18, 2019, pursuant to section 363 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**") and Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and to provide adequate protection to UPS Capital Corporation ("**Lender**"), in its capacity as the Debtor's senior secured creditor under that certain Loan and Security Agreement dated August 17, 2012 (as at any time amended or modified, together with all exhibits, schedules and joinders thereto, the "**Loan Agreement**").

On October 2, 2019, the Court entered the *Consent Interim Order on Debtor's Motion for Order Authorizing Use of Cash Collateral and Notice of Further Hearing* [Docket No. 19] (the "**First Interim Order**"). Under its terms, the First Interim Order authorized the Debtor to use Cash Collateral during the period commencing on the Petition Date, and ending on October 18, 2019 (the "**First Interim Period**").

On October 17, 2019, the Court entered the *Second Interim Consent Order on Debtor's Motion for Order Authorizing Use of Cash Collateral and Notice of Further Hearing* [Docket No. 57] (the "**Second Interim Order**"). Under its terms, the Second Interim Order authorized the Debtor to use Cash Collateral during the period commencing on October 19, 2019, and ending on November 8, 2019 (the "**Second Interim Period**").

On November 7, 2019, the Court entered the *Third Interim Consent Order on Debtor's Motion for Order Authorizing Use of Cash Collateral and Notice of Further Hearing* [Docket No. 74] (the "**Third Interim Order**"). Under its terms, the Third Interim Order authorized the Debtor to use Cash Collateral during the period commencing on November 8, 2019, and ending on December 6, 2019 (the "**Third Interim Period**").

As authorized under the Third Interim Order, the parties have reached an agreement to allow the Debtor to continue its use of Cash Collateral during the Fourth Interim Period (as defined herein) pursuant to the terms set forth herein.

Based upon the parties' agreement to entry of this Order, the Court's further consideration of the Cash Collateral Motion, and all matters brought to the Court's attention at the December 5, 2019 hearing thereon, and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law applicable to the Debtor's use of Cash Collateral (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

    **A.**    <u>**Petition Date**</u>. On September 23, 2019 (the "**Petition Date**"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing with respect to such Debtor the above-captioned chapter 11 case (the "**Case**"). The Debtor is continuing to manage its properties and to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

    **B.**    <u>**Pre-Petition Debt and Liens.**</u> The Debtor agrees and stipulates as follows:

    (i)    <u>Loan Documents</u>. Pursuant to the Loan Agreement, the Lender established a revolving credit facility in favor of the Debtor. The Loan Agreement, together with each agreement, note, instrument, guaranty, mortgage, fixture filing, deed of trust, financing statement, pledge, assignment, and other document executed at any time in connection therewith, in each case as the same has been amended or modified from time to time, are hereinafter collectively referred to as the "**Loan Documents**."

    (ii)    <u>Collateral</u>. Pursuant to the Loan Documents, the Debtor acknowledges it granted to the Lender security interests in and liens upon (the "**Pre-Petition Liens**") all personal property of the Debtor, whether then owned or existing or thereafter created, acquired or arising and wherever located, including, without limitation, all of the Debtor's accounts, general intangibles, documents, instruments, chattel paper, goods (including, without limitation,

inventory, equipment and fixtures), deposit accounts, investment property, letter-of-credit rights and commercial tort claims, all proceeds, products and supporting obligations of each of the foregoing, and all books and records relating to any of the foregoing as set forth in Section 4.1 of the Loan Agreement (all of the foregoing types and items of personal property described above being collectively referred to as the **"Pre-Petition Collateral"**).  Without limiting the foregoing, the Debtor acknowledges it granted to the Lender security interests in and liens upon all of the following (collectively, the "**Pledged Cash Collateral**"): (I) the deposit account of the Debtor, bearing an account number ending in 1790 maintained with JPMorgan Chase Bank, N.A. ("JPMC") (the **"Collection Account"**); (II) the deposit account of the Debtor, bearing an account number ending in 0805 maintained with JPMC (the **"Operating Account"** and collectively with the Collection Account, the "**Pledged Cash Collateral Accounts**"), (III) all deposits or other remittances at any time made to and balances in the Pledged Cash Collateral Accounts at any time, together with all cash, deposits, credits, money orders, checks, drafts, wire transfer funds and sums from time to time credited to or deposited or held in the Pledged Cash Collateral Accounts, (IV) any and all investments made at any time of any balances in the Pledged Cash Collateral Accounts, whether made in other deposit accounts, time deposits or otherwise, and (V) any and all proceeds of any of the foregoing, in each case whether now or hereafter existing or arising, including any distributions from the foregoing and all interest earned in connection with the Pledged Cash Collateral Accounts.  The Debtor further acknowledges that the Pre-Petition Liens are properly perfected, unavoidable liens and security interests.  As of the Petition Date, the balance in the Pledged Cash Collateral Accounts collectively total $27,751.

        (iii)    <u>Pre-Petition Debt</u>.  As of the Petition Date, the Debtor was indebted and liable under the Loan Documents to the Lender for (a) outstanding revolver loans in the principal amount of at least $24,406,997.03; and (b) interest, fees, expenses, and other costs, reasonable

attorneys' fees and charges, and all other Obligations (as defined in the Loan Agreement) for

which the Debtor is liable under the Loan Agreement, including UPS Affiliates Obligations (as

defined in the Loan Agreement), which are secured and which the Debtor stipulates total at least

$125,108.42 (all of the foregoing, together with all other Obligations at any time outstanding,

being collectively referred to as the "**Pre-Petition Debt**").   The Debtor acknowledges and

stipulates that the Pre-Petition Debt is due and owing to the Lender (or with respect to the UPS

Affiliates Obligations, to the UPS Affiliates (as defined in the Loan Agreement)); the Pre-

Petition Debt constitutes the legal, valid and binding obligation of the Debtor, enforceable in

accordance with its terms; and the Debtor stipulates that none of the Pre-Petition Debt or any

payments made to the Lender or applied to the Pre-Petition Debt on or before the Petition Date is

subject to avoidance, subordination, recharacterization, recovery, attack, offset, recoupment,

counterclaim, or defense of any kind pursuant to the Bankruptcy Code or applicable non-

bankruptcy law.

        (iv)   <u>Cash Collateral</u>.  The Lender is entitled to adequate protection within the

meaning of, and pursuant to, sections 361 and 363 of the Bankruptcy Code as a condition to the

Debtor's use, sale, or other disposition of any Pre-Petition Collateral or any Replacement

Collateral (as defined below) or the cash proceeds of either (such proceeds being collectively

called "**Cash Collateral**"), regardless of whether such cash proceeds were in existence on the

Petition Date or were created, acquired, or arose thereafter.  Subject to the entry of this Order,

the Lender consents to the Debtors' use of Cash Collateral on the terms and conditions set forth

in this Order.

        (v)   <u>Value</u>.  The Debtor believes that, as of the Petition Date, the value of the

collateral (whether valued using orderly liquidation or going concern methodologies) granted in

favor of the Lender pursuant to the Loan Documents, including Cash Collateral, equals or

exceeds the aggregate outstanding amount of principal, interest, fees, and other charges (including letters of credit and contingent obligations) comprising the Pre-Petition Debt.

C.    **Need for Use of Cash Collateral.**   The Debtor asserts that it requires the use of Cash Collateral to continue operating its business, including to make payroll and to pay vendors and suppliers and other ordinary working capital expenses.   The Debtor has represented that serious and potentially irreparable harm to the Debtor, its creditors, and its estate may occur absent authorization for the use of the Cash Collateral.

D.    **Service of Motion**.   The Debtor has certified that copies of the Motion and notice of the Hearings have been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the Office of the United States Trustee (the **"United States Trustee"**), counsel for the Lender, and the Debtor's twenty (20) largest unsecured creditors.   The Court finds that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (d).

E.    **Finding Cause**.   Good cause has been shown for the entry of this Order, the granting of adequate protection as set forth herein and authorization for the Debtor to use Cash Collateral during the Fourth Interim Period.   The Debtor's need for use of Cash Collateral is ongoing, immediate and critical.   Entry of this Order will preserve the assets of the Debtor's estate and its value and is in the best interests of the Debtor, its creditors and the Debtor's estate.

F.    **Jurisdiction; Core Proceeding; Venue**.   This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334.   Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).   Venue for this chapter 11 case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

G.   **Adequate Protection**.   The Lender has requested and is entitled to adequate protection of its interests in the Pre-Petition Collateral under 11 U.S.C. §§ 361 and 363, as a condition to use of any Cash Collateral.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.   **Grant of Motion; Authority to Use Cash Collateral**.

(a)   Subject to all of the terms, conditions and limitations of this Order, the Debtor shall be authorized to use Cash Collateral consisting of cash proceeds of Collateral solely for Permitted Purposes (as defined below) during the period commencing on December 7, 2019 and ending on January 17, 2020 (the "**Fourth Interim Period**"), unless and to the extent extended by written agreement of the Debtor and the Lender.   Neither the Lender's consent to use of Cash Collateral nor the Debtor's use of Cash Collateral shall release, limit, impair or provide any defense to enforcement of any non-Debtor's guaranty of payment or performance of any of the Pre-Petition Debt, and all such guaranties shall remain in full force and effect and enforceable according to their terms.

(b)   The term "**Permitted Purposes**" shall mean, with respect to the Debtor, the Debtor's use of Cash Collateral owned by it in the ordinary course of the Debtor's business solely for the purposes of supporting the Debtor's ongoing working capital needs and in order to satisfy administrative expenses incurred as part of the administration of the Case, to the extent, and only for the specific purposes, and up to the amounts set forth in the budget attached hereto as **Exhibit A** (as such budget may be amended or extended with the written approval of the Lender, the "**Budget**"); provided, however, that (A) the Debtor may use Cash Collateral for disbursements totaling up to 110% of any line-item shown in the Budget during the Fourth Interim Period without violating the terms of this Order; (B) in no event shall any Cash Collateral be used to pay (i) any pre-petition claim against the Debtor other than amounts shown in the Budget, agreed to

by the Lender in writing, and specifically approved by order of the Court after notice and

hearing, including payroll, payroll related taxes, employee benefits and "trust fund" sales and use

taxes to the extent of applicable line items in the Budget, and adequate protection payments to

the Lender as authorized by the Court, or (ii) any professional fees or expenses of any

professionals retained by the Debtor, any official committee of unsecured creditors appointed in

the Case (the "**Committee**") or any other fiduciary appointed in the Case to the extent such fees

or expenses are incurred in (x) objecting to or challenging the validity, extent or priority of any

of the Pre-Petition Liens, the amount or the validity or allowance of any of the Pre-Petition Debt,

or the validity or enforceability of any of the Loan Documents, (y) challenging or appealing any

aspect of this Order or any final order governing the Debtor's use of Cash Collateral (the "**Final

Cash Collateral Order**"), or (z) asserting any claim against the Lender, including any claim

under chapter 5 of the Bankruptcy Code; and (C) in no event shall any Pledged Cash Collateral

be used by the Debtor, except pursuant to the terms of this Order.  In the event the Debtor fails to

receive at least 90% of the weekly collections set forth in the Budget for the Fourth Interim

Period, or any expense line-item set forth in the Budget for the Fourth Interim Period exceeds

110% of the amount projected in the Budget, the Lender shall be entitled to seek emergency

relief from this Court to prevent the further use of Cash Collateral by the Debtor hereunder, or

such other relief as the Lender may deem appropriate.

2.      **Collection of Accounts Receivable**. The Debtor shall diligently attempt to collect

all of its pre-petition and post-petition accounts receivable and all other rights to the payment of

money and shall cause all such collections remitted by its customers and other account obligors

to be promptly deposited into the Collection Account, subject in all events to the Debtor's Pre-

Petition Liens and Adequate Protection Liens (as defined below).  The Lender is authorized

pursuant to the Loan Agreement to sweep the Cash Collateral contained within the Collection

Account, and make weekly disbursements into the Operating Account to be used by the Debtor solely for the Permitted Purposes, in accordance with the amounts set forth in the Budget as necessary to cover such Permitted Purposes, with all remaining proceeds contained within the Collection Account to be applied by the Lender, at its sole and exclusive discretion, towards payment of the Pre-Petition Debt. Nothing in this Order shall be construed to require the Lender to extend credit or make available to the Debtor any funds received by the Lender that are not good, collected funds at such time. The Lender shall be authorized to deduct from Cash Collateral amounts sufficient to pay and to be used to pay reasonable and customary fees and expenses associated with the wiring or other transfer of such funds. Until expended by the Debtor, all Cash Collateral shall remain subject to the liens and claims of the Lender under the Loan Documents and this Order.

3. **Insurance**. The Debtor is authorized and directed to comply with all provisions contained in any of the Loan Documents relating to the maintenance and continuation in effect of any insurance policies, whether property, casualty, liability, credit or otherwise, provided that the Debtor shall only be authorized to pay insurance premiums in such amounts and at such times as are necessary to prevent imminent lapse or cancellation of a policy or policies.

4.      <u>**Suspension and Termination of Authority to Use Cash Collateral**</u>.

(a)      <u>Suspension</u>.  The Debtor's authority to use Cash Collateral shall be suspended (and the Debtor shall therefore not be authorized to use such Cash Collateral for any purpose other than paying the Pre-Petition Debt) for so long as any one or more of the following conditions exists: (i) the Debtor has failed to discharge any duty or other obligation imposed upon it in this Order or has otherwise violated any requirement or condition to the use of Cash Collateral provided in this Order and such failure has not been cured or otherwise remedied within twenty-four (24) hours of Debtor's receipt of written notice of such failure or violation (which notice may be by e-mail to Debtor's counsel); or (ii) there is pending any motion by the Debtor to dismiss or convert the Case to a case under chapter 7.

(b)      <u>Disputes</u>.  On any date that the Lender determines that the Debtor's authority to use Cash Collateral has been suspended pursuant to subparagraph (a) above, the Lender or its counsel may file (using the Court's CM/ECF filing system) a "Notice of Suspension," in which the condition or conditions resulting in the suspension of authority to use Cash Collateral shall be specified, and the Debtor shall not be authorized to issue any checks, make any ACH transfers or otherwise withdraw funds drawn on any depository account that contains any Cash Collateral, but shall forthwith transfer funds in such accounts to the Lender or to an account under the control of the Lender; <u>provided</u>, <u>however</u>, that if the Debtor in good faith disputes that its authority to use Cash Collateral has been properly suspended, the Debtor may file within three (3) business days after the filing of a Notice of Suspension a notice of such dispute in which it must set forth the basis for such dispute, any such dispute shall be resolved by the Court, and the Debtor shall be authorized to continue to use Cash Collateral (but not any Pledged Cash Collateral) until the Court resolves the dispute.  In the event the Court resolves any such dispute

in favor of the Lender, the Debtor's use of Cash Collateral shall be terminated, and the Lender shall be entitled to seek such additional relief as it deems appropriate.

(c)     Termination.   The Debtor's authority to use Cash Collateral shall automatically terminate for all purposes (except to pay the Pre-Petition Debt) upon the soonest to occur of the following events or conditions: (i) the Fourth Interim Period expires without the Final Cash Collateral Order having been entered in form and content acceptable to the Lender; (ii) a chapter 11 trustee or examiner with expanded powers is appointed in the Case; (iii) the Case is converted to a chapter 7 case or is dismissed; (iv) the Court enters an order granting the Lender relief from the automatic stay or prohibiting the use of Cash Collateral by the Debtor; (v) the Court enters an order granting to any person or entity other than the Lender relief from the automatic stay to foreclose upon any lien or security interest with respect to any of the Pre-Petition Collateral; (vi) this Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of the Lender; or (vii) without the prior written consent of the Lender, the entry of an order authorizing the Debtor to use any Cash Collateral on terms other than as set forth in this Order or to obtain any financing under Section 364(d) of the Bankruptcy Code secured by a priming lien or lien of equal priority with the Adequate Protection Liens or the Pre-Petition Liens, unless such an order provides, as a condition to its entry, that the Pre-Petition Claim shall be indefeasibly paid in full in cash.

**5.     Adequate Protection Granted to the Lender**.

(a)     Adequate Protection Liens.   As adequate protection for any diminution in the value of the Lender's interests in the Pre-Petition Collateral, including, without limitation, any diminution resulting from the use of Cash Collateral on or after the Petition Date, the Lender is hereby granted, pursuant to sections 361, 362 and 363 of the Bankruptcy Code, valid, binding, enforceable and automatically perfected liens on and security interests in (collectively, the

"**Adequate Protection Liens**") all personal property of the Debtor that is the same type or nature as the Pre-Petition Collateral, whether acquired, created, or existing prior to, on or after the Petition Date, and all cash and non-cash proceeds of the foregoing (all such personal property being collectively referred to as the "**Replacement Collateral**"; and together with the Pre-Petition Collateral, the "**Collateral**").  For the avoidance of doubt, the Adequate Protection Liens include the Lender's security interest in and liens upon the Pledged Cash Collateral in the Pledged Cash Collateral Accounts.  For the avoidance of doubt, for the Fourth Interim Period (and subject to the entry of the Final Cash Collateral Order), the Lender is not granted a security interest or lien in any cause of action of the Debtor's bankruptcy estate arising under sections 544, 545, 547, 548, 549, or 553(b) of the Bankruptcy Code.

(b)     Priority of Adequate Protection Liens.  The Adequate Protection Liens shall be junior in priority only to (i) the Pre-Petition Liens and (ii) any other valid, enforceable, perfected and nonavoidable liens and security interests on assets of the Debtor that existed on the Petition Date and are superior in priority to the Pre-Petition Liens as of the Petition Date, after giving effect to any subordination or intercreditor arrangement.

(c)     Perfection of Adequate Protection Liens.  The Adequate Protection Liens and all claims, rights, interests, administrative claims and other protections granted to or for the benefit of the Lender pursuant to this Order and the Bankruptcy Code shall constitute valid, enforceable, non-avoidable and duly perfected security interests and liens.  The Lender shall not be required to file or serve financing statements, mortgages, deeds to secure debt or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens, but upon request by the Lender, the Debtor is hereby authorized to execute and deliver any such financing statements, mortgages, deeds to secure debt or similar instruments.  The failure by the

Lender to request, or the failure or refusal of the Debtor to execute or deliver, any documentation relating to the Adequate Protection Liens shall in no way affect the validity, perfection or priority of such Adequate Protection Liens.

(d)      Interest and Fees; Professional Fees.  By no later than the first calendar day of each calendar month, the Debtor shall pay to the Lender, in cash, interest and fees that have accrued after the Petition Date in respect of the Pre-Petition Debt at the rates specified in the Loan Agreement and the other Loan Documents (which, as of September 13, 2019, have been accruing, and shall continue to accrue at the default rates applicable thereto), unless such payment is deferred by the Lender at its sole discretion.  As additional adequate protection, the Debtor shall pay to the Lender, in cash, the reasonable and documented out-of-pocket expenses incurred by the Lender, whether arising prior to, on, or after the Petition Date, and payable or reimbursable to it under any of the Loan Documents, including, but not limited to, fees and disbursements of counsel (including local bankruptcy counsel) and Lender's Financial Advisor (as defined below).  The Debtor shall make each such payment to the Lender, without the necessity of the Lender's filing formal fee applications, no later than five (5) business days following the conclusion of a Review Period (defined below).  The Lender may send by electronic mail each month to counsel for the Debtor, counsel for any Committee, and the United States Trustee, a copy of invoices for such fees and expenses (the "**Invoiced Fees**") (subject in all respects to redaction for, and without waiving, any applicable privilege or work product doctrine), and each such noticed party shall have ten (10) business days from the date of its receipt of such copy from the Lender (the "**Review Period**") to serve on counsel for the Lender a written objection to the payment of any of such fees and expenses.  Within five (5) business days after expiration of the Review Period, the Debtor shall pay any portion of such Invoiced Fees as

to which a timely objection is not made and the Court shall decide any timely objection unless otherwise resolved by agreement of the Lender and the objecting party.

(e)    <u>Lender's Engagement of a Financial Advisor</u>.  In the event the Lender elects to engage a financial advisor and/or financial advisory firm (the "**Financial Advisor**"), the Financial Advisor shall be entitled to monitor and review the Debtor's finances and operations and shall be given complete access to all of the Debtor's books and records.  The Financial Advisor shall also be entitled to communicate directly, during reasonable business hours, with the Debtor and its officers, legal counsel, and financial advisors, as well as with any of the Debtor's employees reasonably necessary in order for the Financial Advisor to obtain access to the Debtor's books and records; *provided, however*, that a representative of the Debtor's financial advisor must be available and present during such communications (which advisor representative shall make himself or herself reasonably available).  The rights of the Financial Advisor shall be supplemental to, and are in no way limited by, all other adequate protection provided herein and the Lender's right to access the Debtor's premises and records pursuant to paragraph 6 of this Order.

6.     **Access to Premises and Records; Reporting**.

(a)     The Lender and its respective representatives and agents (including, without limitation, employees, officers, legal counsel, Financial Advisor, appraisers, auditors, accountants, and consultants) shall be authorized, during normal business hours upon reasonable notice, to conduct an on-site field examination during the Fourth Interim Period in order to inspect and evaluate the Debtors' property and financial records, *provided, however*, that a representative of the Debtor's financial advisor must be available and present during such on-site field examinations (which advisor representative shall make himself or herself reasonably available).

(b)     No later than 5:00 p.m. Central time on each Wednesday, the Debtor shall deliver to the Lender the following written reports or data in form and substance satisfactory to the Lender:

1.     A report showing the cash collections (regardless of how delivered, and including payments delivered or deposited into any bank account used by the Debtor) of the Debtor on each business day of the prior week;

2.     A report showing the cash ledger balances available to the Debtor as of the close of business on the previous Friday;

3.     A report showing the expenditures made by the Debtor during the preceding calendar week;

4.     A report detailing the Debtor's current perpetual inventory, by location; all outstanding accounts receivable, with aging; and accounts payable; and

5.     A report as of the preceding Friday comparing the Debtors' actual performance to the Debtors' performance projected in the Budget for the applicable period.

(c)    The Debtor shall continue to provide the Lender updated lists and reports of accounts receivable agings, and related data, documents and files as reasonably requested by Lender in the same manner and form that were being delivered to the Lender prior to the Petition Date under the Loan Agreement, if any.

(d)    In addition to the reporting required under subparagraphs (b) and (c) herein, the Debtor shall continue to comply with the reporting obligations under the Loan Documents, specifically including Sections 2.8, 5.2, 5.3, 8.6 and 10 of the Loan Agreement.

(e)    The Debtor shall provide Lender any and all information regarding the Debtor's account balances, deposits, disbursements, and any other information that the Lender may reasonably request.

(f)    The Debtor shall provide Lender with any and all information regarding the Debtor's accounts receivable or any other related information that the Lender may reasonably request.  The Debtor shall provide the Lender with a detailed plan and a weekly progress report on (i) the return, by Amazon, ASI, and Wal-Mart, of certain of the Debtor's inventory needing software updates (specifically including providing copies of all purchase orders for such products, as well as signed bills of lading with original stamps for all products returned to China for updating (which shipment(s) Lender did not consent to, and with respect to which all of Lender's rights are reserved)), and (ii) inventory software updates.  Lender shall be entitled to inspect such returned inventory, its collateral, wherever located, subject to reasonable notice to the Debtor and subject to reasonable costs and expenses, and the Debtor shall take reasonable steps to facilitate such inspection.  The Debtor shall provide Lender with the identity and contact information of its account debtors, and shall permit one or more Lender representatives to observe communications by the Debtor with the Debtor's account debtors to confirm information regarding the Debtor's accounts receivable and to confirm the intended return from Amazon,

ASI, and Wal-Mart of the Debtor's inventory needing software updates. If Lender learns or reasonably believes that Amazon, ASI, and/or Wal-Mart do not intend to return to Debtor the Debtor's inventory needing software updates, as has been represented by the Debtor, then the Lender may seek on an emergency or expedited basis relief from this Order and termination of the use of its Cash Collateral or such other relief as the Lender may deem appropriate.

(g)     If the Lender believes that the Debtor has failed to provide it with financial information or access as is required by this paragraph, following notice to the Debtor in writing (e-mail communication being sufficient) of asserted deficiencies, the Lender may seek on an emergency or expedited basis relief from this Order and termination of the use of its Cash Collateral or such other relief as the Lender may deem appropriate, if the Lender reasonably believes the Debtor has failed to cure such deficiencies within a reasonable period of time.

7.     **Superpriority Claim Rights.** This Order shall not affect the Lender's rights, if any, under section 507(b) of the Bankruptcy Code to the extent the protections afforded herein as adequate protection regarding the Debtor's use, sale, consumption or disposition of any Pre-Petition Collateral (including, without limitation, Cash Collateral) prove to be inadequate.

8.     **Surcharge Waiver.**   Subject to entry of the Final Cash Collateral Order, in no event shall any costs or expenses of administration in the Case be imposed upon the Lender or any Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise. The Lender has not consented to any surcharge under section 506(c) of the Bankruptcy Code, and no such consent may be implied from any action, inaction or acquiescence of the Lender.

9.     **Reservation of Rights**.

(a)     Nothing in this Order shall constitute or be construed to (1) be an admission by the Lender as to the adequacy of the protection provided herein (Lender reserving its rights to seek additional adequate protection as may be appropriate); (2) release, impair or alter in any

way the obligations and liability of any guarantor of the Pre-Petition Debt or any subordination of other obligations of the Debtor in favor of prior payment of the Pre-Petition Debt; (3) prohibit the Lender from seeking any further relief in the Case, including, without limitation, additional adequate protection, dismissal or conversion of the Case, relief from the automatic stay under section 362(d) of the Bankruptcy Code, the appointment of a trustee or examiner, or the taking of any Bankruptcy Rule 2004 examinations; (4) constitute a waiver by the Debtor or the Lender of the right to request in a further interim or final order on Cash Collateral provisions which may be different from or in addition to any of the provisions contained in this Order; or (5) prejudice any creditor, any future official committees, the United States Trustee, or a subsequent chapter 7 or 11 trustee's right to challenge the extent, validity, perfection, or priority of the Lender's pre- or - post Petition liens and security interests.

(b)     The Lender's delay or failure to seek relief or otherwise exercise its rights and remedies, including under the Loan Documents, the First Interim Order, the Second Interim Order, the Third Interim Order, this Order or applicable law, shall not constitute a waiver of any of its rights and remedies hereunder, thereunder or otherwise, unless any such waiver is expressly pursuant to a written instrument executed by the Lender in accordance with the terms of the Loan Documents.  Further, in no way does the Lender's willingness to continue to consent to the use of its Cash Collateral for the Fourth Interim Period prejudice its ability to exercise its rights and remedies under the Loan Documents, Orders of this Court or applicable law, regardless of whether the actions or inactions of the Debtor giving rise to such rights or remedies occurred prior to or following entry of this Order.

**10.    Survival of Provisions of This Order**.  The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order dismissing the Case or converting the Case to a case under chapter 7 of the Bankruptcy Code, and all of the terms and

conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in this or in any superseding case under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

11.   **Use of Pledged Cash Collateral by Lender; Depository Liens; Setoff for Amounts Owing**.  Without limiting the Debtor's obligations under Paragraph 5, the Lender is hereby expressly authorized to setoff against the Pledged Cash Collateral Accounts all interest (including any additional default rate of interest), fees, and expenses payable pursuant to Paragraph 5(d) of this Order and remit the proceeds thereof to the applicable payee.

12.   **Order Immediately Effective**.  Notwithstanding anything to the contrary in the Bankruptcy Rules or otherwise, the effectiveness of this Order shall not be stayed, and this Order shall be immediately effective upon its entry.

13.   **Binding Effect; Successors and Assigns**.  The provisions of this Order shall be binding upon all parties in interest in the Case, including, without limitation, the Debtor and its respective successors and assigns (including any Chapter 11 trustee hereafter appointed for the estate of the Debtor, any Chapter 7 trustee appointed or elected in a superseding Chapter 7 case, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to any property of the estate of the Debtor), and shall inure to the benefit of the Lender and its respective successors and assigns. In no event shall the Lender have any obligation to permit the use of the Collateral (including Cash Collateral) by, any Chapter 7 trustee, Chapter 11 trustee or similar responsible person appointed or elected for the estate of the Debtor.

14.   **Objections Overruled**.  Any and all objections to the relief requested in the Cash Collateral Motion, to the extent not otherwise withdrawn, waived, or resolved by consent at or

before the Hearing, and all reservations of rights included therein, are hereby OVERRULED and
DENIED.

15.    **Objection Deadline**.  If any party in interest shall have an objection to any of the
provisions of this Order, such party may assert such objection at the Final Hearing (as defined
below), if a written statement setting forth the basis for such objection is filed with the Court and
concurrently served upon (a) the Office of the United States Trustee, Becker Building, Rm. 1100,
401 Main Street, Peoria, IL 61602, Attention: Sabrina M. Petesch; (b) counsel for the Debtor,
FactorLaw, 105 W. Madison St., Suite 1500, Chicago, IL 60602, Attention: William J. Factor;
(c) counsel for the Lender, Parker Hudson Rainer & Dobbs LLP, 303 Peachtree Street NE, Suite
3600, Atlanta, GA 30308, Attention: Bryan E. Bates and Matthew M. Weiss (so that such
objections and responses are filed on or before 5:00 p.m., prevailing Central time on January 13,
2020).  If an objecting party shall fail to appear at the Final Hearing and assert the basis for such
objection before the Court, such objection shall be deemed to have been waived and abandoned
by such objecting party.

16.    **Notice of Final Hearing; Service of Fourth Interim Order**.  **A final hearing on
the Cash Collateral Motion will be held at 10:00 a.m. on January 16, 2020, at Room No.
232, 600 E. Monroe Street, Springfield, IL 62701** (the **"Final Hearing"**).  Promptly after the
entry of this Order, the Debtor shall mail, by first class mail, a copy of this Order and notice of
the Final Hearing to counsel for the Lender, the United States Trustee, any creditors holding
liens on any of the Collateral, the Internal Revenue Service, and all parties who have filed
requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of
service regarding same with the Clerk of the Court.  Such service shall constitute good and
sufficient notice of the Final Hearing.

17.    **Headings**.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

### ###

APPROVED FOR ENTRY

*/s/ William J. Factor*
William J. Factor (Bar No. 6205675)

FactorLaw
105 W. Madison St., Suite 1500
Chicago, Illinois 60602
Telephone No.: 312.878.6976
E-mail: wfactor@wfactorlaw.com

*Attorney for Debtor EP Technology Corporation U.S.A.*

*/s/  Bryan E. Bates*
Bryan E. Bates (Georgia Bar No. 140856)
Parker, Hudson, Rainer & Dobbs, LLP
303 Peachtree Street NW
Suite 3600
Atlanta, Georgia 30308
Telephone No.:  404.420.4333
E-mail: bbates@phrd.com

*and*

Emmet A. Fairfield (Bar No. 6180505)
Brown, Hay & Stephens, LLP
205 S. Fifth Street
P.O. Box 2459
Springfield, IL 62705
Telephone No.: 217.544.8491
E-mail: efairfield@bhslaw.com

*Attorneys for Lender UPS Capital Corporation*

## Exhibit A

**Budget**

| | 11<br>12/6/2019 | 12<br>12/13/2019 | 13<br>12/20/2019 | 14<br>12/27/2019 | 15<br>1/3/2020 | 16<br>1/10/2020 | 17<br>1/17/2020 |
|---|---|---|---|---|---|---|---|
| **Cash Receipt** | | | | | | | |
| Collection | $ 295,484 | $ 344,487 | $ 5,382,804 | $ 472,998 | $ 250,000 | $ 300,000 | $ 375,000 |
| Less: D&A and Markdowns | | | | | | | |
| Less: Accrued Markdowns | | | | | | | |
| **Total Net Cash Receipts** | **$ 295,484** | **$ 344,487** | **$ 5,382,804** | **$ 472,998** | **$ 250,000** | **$ 300,000** | **$ 375,000** |
| | | | | | | | |
| Total Cash In | | | | | | | |
| | | | | | | | |
| **Cash Disbursements** | | | | | | | |
| Salary Expense | $ - | $ 74,671 | $ - | $ 74,671 | $ - | $ 74,671 | $ - |
| Health Insurance | $ - | $ - | $ - | $ - | $ 15,000 | $ - | $ - |
| Shipping Expense | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 |
| Shipping Supply Expense | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 |
| Office Expense | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 |
| Office Rent Expense | $ 9,115 | $ - | $ - | $ - | $ 9,115 | $ - | $ - |
| Utilities Expense | $ - | $ - | $ 4,411 | $ - | $ - | $ - | $ 4,500 |
| Domestic Travel/Expense Reimbursement | $ 2,500 | $ - | $ - | $ - | $ - | $ 2,500 | $ - |
| International Travel Expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Misc Expenses | $ 1,400 | $ - | $ - | $ - | $ 1,400 | $ - | $ - |
| Accounting & Auditing Expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BK Professional Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ 150,000 |
| Secured Lender Legal & Prof Fees | $ - | $ - | $ 34,157 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| Other Agency and Club Fee | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Corporation License and Renew | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Selling and Marketing Expense | $ 20,080 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 |
| Merchandise Processing Fee | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Sales Tax | $ - | $ 1,250 | $ - | $ - | $ - | $ 1,250 | $ - |
| Insurance-Business | $ 1,075 | $ - | $ 5,225 | $ - | $ - | $ - | $ 5,225 |
| Credit Card | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Bank and Merchant Service | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other Processing Charge | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Web Hosting & Domains | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| IT Maintain Expense | $ - | $ 1,250 | $ - | $ - | $ - | $ 1,250 | $ - |
| Customer Refund | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| New PO for products | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| UST Fees | $ - | $ - | $ - | $ - | $ - | $ 20,000 | $ - |
| UPS Interest | $ 166,126 | $ - | $ - | $ - | $ 170,000 | $ - | $ - |
| Vendor payment | | | | | | | |
| **Total Disbursements** | **$ 218,796** | **$ 115,671** | **$ 82,293** | **$ 118,171** | **$ 239,015** | **$ 143,171** | **$ 203,225** |
| | | | | | | | |
| **Beginning Cash** | **$ 376,240** | **$ 452,928** | **$ 681,745** | **$ 5,982,255** | **$ 6,337,082** | **$ 6,348,067** | **$ 6,504,896** |
| Total Disbursements | $ (218,796) | $ (115,671) | $ (82,293) | $ (118,171) | $ (239,015) | $ (143,171) | $ (203,225) |
| Total Receipts | $ 295,484 | $ 344,487 | $ 5,382,804 | $ 472,998 | $ 250,000 | $ 300,000 | $ 375,000 |
| | | | | | | | |
| **Ending Cash** | **$ 452,928** | **$ 681,745** | **$ 5,982,255** | **$ 6,337,082** | **$ 6,348,067** | **$ 6,504,896** | **$ 6,676,671** |